It appears to me that the ground is tenable that the devisees of Montgomery have a right to redeem against the defendants. In considering this question, no reliance is placed upon the trust supposed to be in theUnitas Fratrum. I also admit that when a person comes into an estate in the post, as the King by escheat, such estate is held free from a trust; but an equity of redemption is not such a trust.
In a court of chancery an equity of redemption is defined by Sir M. Hale
to be an equitable right inherent in the land, binding all persons in the post, that is, persons coming in paramount to and not under the title of the mortgagee. The lord of the mortgaged lands when he enters for an escheat takes them subject to the rights of the mortgagor. 1 Powell on Mort., 1, 337; Hard., 479.
Lord Nottingham says an equity of redemption charges the land, and is not a trust. In a court of equity the equity of redemption is the fee simple of the land. Ibid., 338, 11. If, then, the land escheated to the State, subject to Montgomery's rights as mortgagor, it was bound by those rights in the hands of the grantees of the State. If it be admitted that if the land had escheated to the State and was then conveyed to the defendants, and their estate was not a continuance of the estate of the mortgagee's, so as thereby to subject them to the equity of redemption, for the mortgagee's estate was at an end, and that the State held the lands as the lord by escheat was supposed to do before he granted them at all, viz., that he came in the post, was in of another estate, and further if it be admitted that there was no privity between that and the estate of which the mortgagee was possessed, still (264) he held them subject to the equity of redemption.
The same remarks are applicable to a case where the lands do not escheat, as where the King or the State seizes them without right, and *Page 136 
grants them to another, the grantee comes in of a new estate, and holds in the post; no reason can be given why he should not hold them subject to the equity of redemption, as well as if they had escheated and had then been granted. The principle is laid down as a general one, that the mortgagor can redeem against all persons coming in in the post, and the King by escheat is only put as an instance. The reason assigned is that when the money is paid, the mortgagor is placed in statu quo, the land having been only pledged for the money.
If, then, the lands of the defendants are subject to the equity of redemption, is that right barred by length of time? In England the right of the mortgagee is barred by twenty years adverse possession, by the express provision of the statute of limitations. The right of the mortgagor is barred by the same length of time, in analogy to it. Here the mortgagee is barred by seven years adverse possession, by the act of 1715 (Revisal, ch. 2). The mortgagor is barred by no time in analogy to that act, but only by twenty years, in analogy to the rule of the English chancery. On this point I need make no remarks; I consider the question to be at rest. Falls v.Torrance, 11 N.C. 420. It results, then, that the mortgagee may be barred by seven years possession at law; the mortgagor has twenty years to redeem in equity.
It is admitted that the interest of a cestui que trust is dependent on that of the trustee in ordinary cases of trust, and if the trustee is barred by length of time, the trust is lost. But an equity of redemption (265) is an inherent right in the land, and binds the lord, or the State by escheat, as well as their grantee. And if the mortgagor had twenty years to redeem against the mortgagee, no reason can be assigned (as it appears to me) why he should not have twenty years to redeem against the lord, or the State, or their grantee; because the escheat to the King or the State, and the grant by them to an individual, were acts over which the mortgagor had no control, and rights on that account ought not to be weakened. Further, when it is said that the King holds escheated land subject to an equity of redemption, it is understood that he holds it in no manner more injurious to the mortgagor than when it was held by the mortgagee; and that consequently the grantees of the State in this case take the land with the same burden that existed before it was granted to them. I therefore think, in this case, that the right of the mortgagor is not barred by lapse of time.
But it has been argued that the mortgagee might have asserted his right at law against the defendants by bringing a suit for the land. It is true, we now know he might have done so; but the reasoning of the judges inBayard v. Singleton, 1 N.C. 5, leaned to the position that an alien to our Constitution could not hold lands here; and this opinion *Page 137 
was entertained by one of the most eminent lawyers of that day (JudgeJohnston), as appears by his opinion in Stringer v. Phillips, 3 N.C. 158. Indeed, we see how fruitless the suit turned out to be that was brought by Montgomery's trustee. If a suit has not been brought by the mortgagee, the rights of the mortgagor are not to be injured on that account. It is not the case of a trust, which may be lost by the loss of the legal title; but it is the case of an equity of redemption, inherent in the land, where a bill will be sustained against any person, if brought within twenty years. (266)
An objection persents [presents] itself in this case to the form of proceeding. The devisees of Montgomery are not plaintiffs, which they certainly ought to be, in the view I have taken of it, because it is principally for their benefit that a decree is sought against the defendants. But to say the least of this suit, it is an extraordinary one, at least, so far as relates to the time it has been depending. It appears that a suit at law was brought in Morganton Superior Court some time after the Revolutionary War, in which a nonsuit was entered in 1789. The present suit was commenced in 1793, not many years after a court of equity was first established in this State, after the Revolutionary War. At that time there were doubtless but few of the profession who were well acquainted with equity practice. The case has been brought to this Court several times, and partially argued. This is the second time it has been argued on its merits. It has been argued at great length, and the counsel for the plaintiffs at each argument have taken the ground that the trust of the Unitas Fratrum ought to be enforced. And in that view of the case there cannot be the same objection to parties, because Benzein not only represents the mortgagee, but also the interests of theUnitas Fratrum. And admitting his pretensions to be well founded in the latter character, the devisees of the mortgagor are properly made defendants. This is not the case, however, in the view I take of it. Under all these circumstances, if a decree can be made which will reach the justice of the case, it ought to be done. The parties are all before the Court. It is the interest of the mortgagor and mortgagee, as well as their wish, that a decree should be made. The case comes as fairly before the Court, and the interests of all parties can be as well consulted, as if the devisees of Montgomery were plaintiffs. The mortgagee as such, and not as representing the Unitas Fratrum, prays for a decree, and he is interested in doing so. It is proper on his account that the mortgagor should be put in possession of the land, and receive the profits; otherwise, he objects to the payment of the purchase (267) money due to Cossart. *Page 138 
This view of the case steers clear of any injury to the defendants, because if they are answerable to the devisees of the mortgagor in case they were plaintiffs, they cannot be injured or placed in a worse situation in case a decree is made against them on the same principles in the present suit.
I hope, and think, that this case cannot and will not be drawn into precedent unless in cases marked with the same circumstances of delay and embarrassment to which it has been subjected. Further delay would breed further litigation, and be productive of no good to either party. My opinion, therefore, is, that a decree should be entered for the plaintiffs, or rather that the former decree be affirmed.
PER CURIAM. Petition dismissed, with costs.
Cited: Benzein v. Lenoir, post, 448; Webber v. Taylor, 55 N.C. 12;King v. Rhew, 108 N.C. 700. *Page 139